UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISANDRO HOLGUIN RAMIREZ,<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX FACILITY, et al.,<br>Respondents. | No. 1:26-cv-05002-DJC-CKD<br><br>ORDER |

Before the Court is a First Amended Petition for Writ of Habeas Corpus (Pet. (ECF No. 11)) filed by a noncitizen who has been detained by Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1225(b). The Court grants the Petitioner's First Claim for Relief and orders Petitioner's release from custody.

## BACKGROUND

Petitioner is a citizen of Colombia currently detained by Immigration and Customs enforcement ("ICE"). (Opp'n (ECF 8) at 1.) Petitioner has been a lawful permanent resident for around three decades. (FAP ¶ 24.) On November 3, 2024, Petitioner left the United States on a three-day cruise and upon his return was paroled back into the country as an arriving alien with deferred inspection (*Id.*; Opp'n at 1.) On May 7, 2025, Petitioner appeared for his Deferred Inspection and was taken into

custody by immigration officials. (Opp'n, Ex. 1 (ECF 8-1), at 2). He has been detained since. On the day that Petitioner was taken into custody, Respondents issued Petitioner a Notice to Appear, charging Petitioner as inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) and § 1182(a)(2)(A)(i)(II). (*Id.*) On November 24, 2025, an Immigration Judge ordered found Petitioner inadmissible on both charged grounds, denied a waiver under INA § 212(h)(1)(B), and ordered removal to Colombia. (Opp'n, Ex. 5 (ECF No. 8-5).) Petitioner appealed to the Board of Immigration Appeals on June 29, 2026; his appeal remains pending. (FAP Ex. D (ECF 11-5).)

The briefing on this matter is complete. (Pet. (ECF No. 1); Mot (ECF No. 2; Opp'n; FAP; Mot. (ECF No. 12); Resp. (ECF No. 13); Traverse (ECF No. 14).)

**DISCUSSION**

Respondents assert that Petitioner is detained under 8 U.S.C. § 1225(b) because "the Government may regard a lawful permanent resident as seeking an admission (and thus as not already admitted) if he has committed an offense identified in section 1182(a)(2) . . . including a crime involving moral turpitude." *Blanche v. Lau*, 146 S. Ct. 1981, 1986 (2026) (internal citations omitted). Under 8 U.S.C. § 1101(a)(13)(C)(v), "an alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien. . . has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title." Petitioner has not contested Respondents' claim that he has committed an offense identified in section 1182(a)(2), nor has he claimed that he has been granted qualifying relief. The Court finds that Petitioner is a former Lawful Permanent Resident who has committed a qualifying crime under section 1182(a)(2) and is therefore "seeking admission." Therefore, his detention is governed by section 1225(b).

Petitioner raises claims similar to ones this Court has already addressed. This Court has joined other district courts in concluding that unreasonably prolonged

detention under section 1225(b) without a bond hearing can violate the Due Process Clause. *See, e.g., Mohammad v. Warden of Cal. City Det. Ctr.*, No. 1:26-cv-00118-DJC-CSK, 2026 WL 192368 (E.D. Cal. Jan. 26, 2026); *Saribekyan v. Chestnut*, No. 1:26-cv-01696-DJC-DMC (E.D. Cal. Mar. 19, 2026); *Du v. Chestnut*, No. 1:26-cv-01435-DJC-CSK, 2026 WL 823090 (E.D. Cal. Mar. 23, 2026).

Petitioner has a clear liberty interest in securing his freedom from detention. “Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.” *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner was detained on May 7, 2025, and has remained in custody for approximately a year and four months Petitioner faces indefinitely prolonged detention while the administrative and potentially judicial review of his claims take place. As Petitioner has been deprived of the liberty secured by the Due Process Clause and this deprivation will continue for a protracted and indefinite period, Petitioner has established his liberty interest. *See Zadvydas*, 533 U.S. at 690, 693.

Courts in the Ninth Circuit apply the *Banda* factors to assess when prolonged detention violates the Due Process Clause. *See, e.g., Sandesh v. LaRose*, No. 3:26-cv-00846-JES-DDL, 2026 WL 622690 (S.D. Cal. Mar. 5, 2026) (finding “it most appropriate to apply the *Banda* test to Petitioner's detention here under § 1225(b), as other courts within this district have done in the past” and collecting cases). The factors are: “(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.” *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019).

First, the “length of detention, which is the most important factor,” *id.*, weighs strongly in Petitioner's favor as Petitioner has been detained for over sixteen months.

This is more than twice the duration that courts in this Circuit have found sufficiently prolonged to warrant relief. *Amado v. United States Dep't of Just.*, No. 3:25-cv-02687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (explaining that "[c]ourts have found detention over seven months without a bond hearing weigh toward a finding that it is unreasonable" and collecting cases).

The second factor assesses "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *9 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 18-cv-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). Petitioner's appeal of the Immigration Judge's decision remains pending with the Board of Immigration Appeals. Further, either party may seek Ninth Circuit review of the Board of Immigration Appeals' decision. Therefore, Petitioner faces indefinitely prolonged detention while administrative and potentially judicial appeals of his removal order are decided, and this factor weighs in Petitioner's favor. *Loba L.M. v. Andrews*, No. 1:25-cv-00611-JLT-SAB-HC, 2025 WL 2939178, at *6 (E.D. Cal. Oct. 16, 2025), report and recommendation adopted, No. 1:25-cv-00611-JLT-SAB, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025) (finding that "[a]lthough future events are difficult to predict, the Court nevertheless finds that the pending appeal before the BIA and possible remand to the immigration court for further proceedings or possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner"); *Bojorge-Sequeira v. Geo Grp. Inc.,* No. 2:25-cv-01807-KKE-GJL, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026*), report and recommendation adopted*, No. 2:25-cv-01807-KKE-GJL, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026) (finding this factor weighed in favor of petitioner who had appealed the Immigration Judge's decision to the BIA).

The third factor considers the conditions of detention. "The more that conditions under which the [noncitizen] is being held resemble penal confinement,

the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d. at 1119. Here, this factor strongly favors. Petitioner has moved among six facilities. (FAP ¶ 46.) In initial pro se habeas petition, Petitioner describes his detention as a "nightmare torment[ing]" both him and his family. (Pet. ¶ 23.) He recalls that during his arrest he was "treated like an animal, handcuffed hand and foot for almost 18 hours" and then taken to detention in Florida, where he was "put in a cell with 32 people." (*Id.*) He then experienced what he called "physical and psychological abuse" in the Florida detention facility for seven months. (*Id.*) He reports that at one point during his detention, a guard pushed him hard, causing Petitioner to fall to the ground and to injure his knee; the injury has persisted and Petitioner has not received medical attention for it. (*Id.*) At one point, Petitioner recalls that he was told by officials he was being released home: instead, after about 36 hours of transfer while handcuffed and deprived of food, he found himself in a Louisiana detention facility. (*Id.*) In the Louisiana facility, Petitioner was provided with spoiled food including moldy bread and old ham he described as "greenish" and which caused Petitioner stomach pain and diarrhea "almost to the point of dehydration." (*Id.*) He did not have access to medical attention or to communication with the outside world. (*Id.*) He then was transferred to Alligator Alcatraz Detention Center, where he states food was "extremely scarce and in poor condition" and where the officers treated him "with physical and psychological violence. (*Id.*) He reports the guards would tell detainees that they "would never get out" and that the guards "could do whatever they wanted to us since we had no rights in this country." (*Id.*) Petitioner states he experienced anxiety attacks in this environment. (*Id.*)

Petitioner has, in sum, experienced prolonged periods without food and malnutrition from scarce and spoiled food; physical abuse from guards; untreated medical issues including an injury from the physical abuse he experienced at the hands of a guard; and verbal abuse from guards, including discriminatory statements and deception about his detention period. This factor strongly favors the Petitioner.

The fourth and fifth *Banda* factors involves the delay attributed to Petitioner and the Government, respectively. Here, Petitioner is pursuing an appeal of the Immigration Judge's denial of relief. Petitioner's appeal of the Immigration Judge's decision is a legitimate avenue for relief from removal and does not weigh against him. *See Masood v. Barr*, No. 19-cv-7623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2022). The record does not suggest, and Respondents do not argue, that any delays in the removal process were caused by Petitioner acting unreasonably or in bad faith. *See Martinez*, 2019 WL 5968089, at *10 (distinguishing between "legitimate defenses" to removal, which "cannot undermine [a petitioner's] claim that detention has become unreasonable" and "dilatory" or "bad faith" tactics to "deliberately slow the proceedings"). And although Petitioner points to no steps the Government has taken in bad faith to delay these proceedings, to the extent any delay is caused by the immigration court and BIA's processing times, this delay is attributable to the Government. *Id*. Thus, the fourth factor is neutral and the fifth favors Petitioner.

The sixth factor asks courts to consider the likelihood that the removal proceedings will result in a final order of removal. However, the Court lacks sufficient information to assess the likelihood that Petitioner's removal proceedings will result in a final order of removal and therefore declines to do so. *See Sarr v. Scott*, 765 F. Supp. 3d 1091, 1109 (W.D. Wash. 2025) (declining to speculate as to the merits of Petitioner's appeal to the Ninth Circuit after the Immigration Judge and the BIA found Petitioner removable). Therefore, the last factor is neutral.

The balance of the factors favors Petitioner. Four of the six factors weigh in Petitioner's favor and two are neutral. Stated differently, every load-bearing factor supports Petitioner while none weigh in the Government's favor.

Having established Petitioner has a liberty interest and determined that his prolonged and indefinite detention entitles him to process, the Court finds Petitioner is entitled to relief. "H]abeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). The Supreme Court has recognized that habeas

corpus "is not now and never has been a static, narrow, formalistic remedy." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) Therefore, federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Although the Court recognizes that Petitioner is mandatorily detained under section 1225(b) and has been charged with serious crimes, his detention of over sixteen months dramatically outweighs his criminal detentions: as Petitioner points out, his "records of conviction reflect that no sentence imposed on him exceeded two days of custody," suggesting that the "sentencing courts closes to these offenses did not regard any of them as warranting incarceration." (FAP ¶ 26.) And the detention of criminal aliens during immigration proceedings is not for the purpose of criminal punishment. *See Zadvydas*, 185 F.3d at 290. Moreover, when Petitioner was paroled into the country in 2024 as an arriving alien with deferred inspection, he was not put in custody, also suggesting that an immigration official found that he was not an immediate danger or flight risk. (*Id.* ¶ 24.)

As discussed, the *Banda* factors strongly favor Petitioner, especially given his lengthy detention and the dismal and violent conditions of confinement he has experienced. Under these circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, --- F. Supp. 3d ----, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026).

## CONCLUSION

IT IS HEREBY ORDERED that:

1. Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 11) is granted as to the First Claim for Relief.
2. Respondents are ordered to immediately release Petitioner Lisandro Holguin Ramirez from custody and return all of Petitioner's documents and possessions.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner without a change in circumstances to warrant Petitioner's re-detention.
4. The Clerk is directed to serve the California City Detention Facility with a copy of this Order.
5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

IT IS SO ORDERED.

Dated: **September 15, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC10-Ramirez126-cv-05002.merits